# IN THE SUPREME COURT OF TEXAS

No. 16-0098

THE DALLAS MORNING NEWS, INC. AND STEVE BLOW, PETITIONERS,

v.

JOHN TATUM AND MARY ANN TATUM, RESPONDENTS

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FIFTH DISTRICT OF TEXAS

JUSTICE BOYD, joined by JUSTICE LEHRMANN and JUSTICE BLACKLOCK, concurring.

I imagine it's no surprise by now that many courts and commentators have complained that defamation law is a "quagmire,"[1] lacks "clarity and certainty,"[2] is "overly confusing"[3] and "convoluted,"[4] leaves courts "hopelessly and irretrievably confused,"[5] and "has spawned a morass of case law in which consistency and harmony have long ago disappeared."[6] I'm afraid Part III.A.

---

[1] *Curtis Pub. Co. v. Butts*, 388 U.S. 130, 171 (1967) (Black, J., concurring).

[2] Arlen W. Langvardt, *Media Defendants, Public Concerns, and Public Plaintiffs: Toward Fashioning Order from Confusion in Defamation Law*, 49 U. PITT. L. REV. 91, 94 (1987).

[3] Rodney A. Smolla, *Let the Author Beware: The Rejuvenation of the American Law of Libel*, 132 U. PA. L. REV. 1, 63 (1983); *see also* Lisa K. West, *Milkovich v. Lorain Journal Co.—Demise of the Opinion Privilege in Defamation*, 36 VILL. L. REV. 647, 687 n.22 (1991) (addressing the "confusing state" of defamation law).

[4] *Holtzscheiter v. Thomson Newspapers, Inc.*, 506 S.E.2d 497, 514 (S.C. 1998) (Toal, J., concurring).

[5] *Id.*

[6] *Mittelman v. Witous*, 552 N.E.2d 973, 978 (Ill. 1989), *abrogated by Kuwik v. Starmark Star Mktg. & Admin., Inc.*, 619 N.E.2d 129 (Ill. 1993).

of the Court's opinion in this case—in which the Court addresses whether Steve Blow's column was reasonably capable of a defamatory meaning—tends to prove their point. Of course, the Court is writing on a cluttered slate. But I fear its effort to advance the law by introducing new terminology and addressing concepts unnecessary to this decision only makes things worse.

The Court begins its twenty-five-page analysis by introducing the new labels "textual defamation" and "extrinsic defamation" for what courts have always called "defamation per se" and "defamation per quod." This case involves textual defamation, the Court explains, which includes both explicit defamation—which is textual and does not involve extrinsic evidence—and implicit defamation (which the Court now calls defamation by implication)—which exists when a publication's text creates a false and defamatory impression (making it the converse of the substantial-truth doctrine), but is not to be confused with defamation by innuendo, which is actually a type of extrinsic defamation. Textual defamation by implication involves the publication's gist, which may arise implicitly because of the article's as-a-whole gist (in which case the substantial-truth doctrine may apply), but only if it is reasonably capable of a defamatory meaning, which does not mean it is or is not ambiguous, but does mean it is capable of at least one defamatory meaning, and whether it is ambiguous depends on how many meanings it is reasonably capable of, but that does not mean all reasonable readers would perceive all possible implications because that standard when applied in gist cases renders the objectively reasonable reader redundant. Or defamation by implication may arise from a partial or discrete implication, which really means the gist of a part of the article (but the Court doesn't call that a gist), to which implication the substantial-truth doctrine does not apply. But it does not mean that a reasonable reader could perceive a defamatory meaning, and instead means that the implication the plaintiff

alleges arises from an objectively reasonable reading, although the implication may or may not be ambiguous. But regardless of whether the defamation by implication arises from the as-a-whole gist or a discrete implication, the decision whether it is reasonably capable of a defamatory meaning must not exert too great a chilling effect on First Amendment activities—a particular concern in implication cases. So the plaintiff has an especially rigorous burden in such cases, which does not impose a heightened standard of meaning and does not make the implication presumptively an opinion, but does require the plaintiff to provide additional affirmative evidence from the text itself that suggests the defendant objectively intended or endorsed the defamatory inference, a likely scenario if the gist is capable of a defamatory meaning but not necessarily likely if the discrete implication is capable of a defamatory meaning, so the court must conduct an especially vigorous review to confirm the defendant's intent to convey the meaning the plaintiff alleges.

Got it?

A few years ago, a group of organizations that tend to care a lot about defamation law appeared as amici curiae in a case and urged us to "scrap the traditional distinction between per se and per quod defamation," complaining of the "labels' needless opacity."[7] We declined the opportunity, but we did note one First Amendment scholar's assertion that the "ostensibly simple classification system . . . has gone through so many bizarre twists and turns over the last two centuries that the entire area is now a baffling maze of terms with double meanings, variations

---

[7] *Waste Mgmt. v. Tex. Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 146 (Tex. 2014).

3

upon variations, and multiple lines of precedent."[8] I'm beginning to think the amici and the scholar have a point. They're certainly not alone in their view that "nothing short of a fresh start can bring any sanity, and predictability, to this very important area of the law."[9]

I'm not yet ready to scrap our convoluted principles. I can accept the idea that defamation law must be fairly complicated due to its "frequent collision . . . with the overriding constitutional principles of free speech and free press."[10] Despite its "technical complexity," defamation law has "shown remarkable stamina in the teeth of centuries of acid criticism," which "may reflect one useful strategy for a legal system forced against its ultimate better judgment to deal with dignitary harms."[11] But we should always do our best to reduce the confusion, or, at least, avoid adding to it.

The question in this case is pretty simple: For summary-judgment purposes, was Blow's column reasonably capable of a defamatory meaning? We need not—and the Court does not—announce any new substantive legal principles to decide that issue. Applying (but renaming) our existing principles, the Court concludes the column was reasonably capable of conveying the meaning that the Tatums published a deceptive obituary, which is defamatory, but not that their son had a mental illness or that the Tatums exacerbated the problem of suicide. I agree, but I cannot

---

[8] *Id.* (quoting 2 RODNEY SMOLLA, LAW OF DEFAMATION § 7:1 (2d ed. 2010)).

[9] *Holtzscheiter*, 506 S.E.2d at 514 (Toal, J., concurring); *see also* Ty Camp, *Dazed and Confused: The State of Defamation Law in Texas*, 57 BAYLOR L. REV. 303, 304 (2005) (attempting to "clear up the [defamation] statute and the case law and provide attorneys with a rule that is clear and easy to apply").

[10] 11 Lawrence R. Ahern, III, et al., *West's Legal Forms, Debtor & Creditor Non-Bankruptcy* § 10:52 (4th ed. 2017) (commentary).

[11] Harry Kalven, Jr., *Privacy in Tort Law—Were Warren and Brandeis Wrong?*, 31 LAW & CONTEMP. PROBS. 326, 341 (1966).

join the Court's analysis. The answer certainly requires some consideration of the column's implications and gists, and perhaps those are necessarily complicated matters; but if nothing else, we need not rewrite and relabel our existing considerations.

I agree that the Tatums provided some evidence that Blow's column was reasonably capable of conveying the defamatory meaning that the Tatums published a deceptive obituary. I also agree, however, that if the column expressed that assertion, it expressed it as Blow's opinion, not as a fact. Because the column only expressed a potentially defamatory opinion, the Tatums cannot recover for defamation, and we need not also consider whether Blow's opinion was correct or substantially true. For these reasons, I join the Court's judgment and all but parts III.A and III.C of its opinion.

_____
Jeffrey S. Boyd
Justice

Opinion delivered: May 11, 2018

5